**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| BUCKY LITTLECHARLEY and ROBERT GREEN,  )<br>)<br>Plaintiffs,  )<br>)<br>vs.  )<br>)<br>THE CITY OF NORMAN, a  )<br>political subdivision of the State of  )<br>Oklahoma, et al.,  )<br>)<br>Defendants.  ) | Case No. CIV-04-0796 -F |

## ORDER

Two motions for summary judgment are before the court: "The City of Norman's Motion for Summary Judgment Regarding the Claims of Robert Green," filed June 10, 2005 (doc. no. 64), and "Gary Henderson's Motion for Summary Judgment Regarding the Claims of Robert Green," also filed June 10, 2005 (doc. no. 63). Plaintiff Robert Green has responded to the motions, defendants have jointly replied, Mr. Green has sur-replied, and both of the defendants' motions are ready for determination.

The motions seek judgment on all claims remaining in this action, that is, race discrimination and retaliation claims alleged by plaintiff Robert Green against the City of Norman (the City) based on allegations of disparate treatment and having subjected Mr. Green to a hostile work environment; and race discrimination claims alleged against Mr. Henderson based on allegations of disparate treatment and a hostile work environment. Count I of the Second Amended Complaint alleges race discrimination against the City under Title VII, 42 U.S.C. §1981 and 1983, and against Mr. Henderson under § 1981 and 1983. Count II alleges retaliation for complaining of

race discrimination, for filing actions, and for serving as a witness in a federal proceeding. The retaliation claims are alleged against the City under Title VII and § 1981. Any retaliation claims which were originally alleged against Mr. Henderson have been dropped.[1]

## Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

---

[1] Plaintiff's Notice of August 8, 2005 (doc. no. 85) clarifies that a separate retaliation claim is no longer alleged against Mr. Henderson because there are no acts sufficient to support an independent claim of retaliation against Mr. Henderson.

The City's Motion for Summary Judgment

The City's first argument is that the doctrine of claim preclusion entitles it to summary judgment on Mr. Green's hostile work environment discrimination claim.

The City states that claim preclusion requires the satisfaction of four elements, the first of which is that a prior suit must have ended with a judgment on the merits. *See*, Nwosun v. General Mills Restaurants, 124 F.3d 1255, 1257 (10th Cir. 1997), limited on other grounds by Yapp v. Excel Corp., 186 F.3d 1222, 1226 at n. 4 (10th Cir. 1999) (a full and fair opportunity to litigate is more properly understood as an exception to the operation of claim preclusion rather than as a fourth element).  The City then cites Cubie v. Bryan Career College, Inc., 244 F. Supp. 2d 1191 (D. Kan. 2003) for the proposition that the requirement of a judgment on the merits is satisfied in this case by this undersigned's ruling in LittleCharley I which granted the City's motion for summary judgment in that case "to the extent that the plaintiff, Robert Green's Title VII claims are dismissed for lack of jurisdiction." (Order at doc. no. 99 of LittleCharley I.)[2]

Cubie, a Title IX decision, is best understood on this issue as recognizing, in dicta, that a state court judge's prior ruling which held that Ms. Cubie had not exhausted her administrative remedies under the Kansas anti-discrimination act and §1983, would have had preclusive effect in the subsequent Title IX case brought in federal court but only with regard to the limited question of whether plaintiff had

---

[2]LittleCharley I , CIV-02-1703-F, was a discrimination case brought by Bucky LittleCharley, Armando Cheong-Gu, and Robert Green.  Mr. LittleCharley was originally a plaintiff in the instant action as well, and the parties and the court are accustomed to referring to the instant action as LittleCharley II.  Although Mr. LittleCharley is no longer a plaintiff in this second action, this Order adopts that shorthand.  For future purposes, the parties are **DIRECTED** to style this action "Robert Green, plaintiff vs. City of Norman and Gary Henderson, defendants."

exhausted her administrative remedies before bringing her Title IX case and only then "[i]f Title IX actions were subject to the same administrative exhaustion requirements of Title VII and the KAAD...." *Id.* at 1201. The footnotes in Cubie emphasize the district court's understanding that summary judgment only precludes an entire claim when summary judgment rests on findings that go to the ultimate merits of that claim, such as findings in the prior litigation that there were no genuine issues of material fact to support a claim. *Id.* at n. 49.

After review of Cubie and the other relevant authorities, the court concludes that because there was no adjudication of the merits of Mr. Green's hostile work environment claim in LittleCharley I, there is no preclusion of that claim in LittleCharley II.

The City's next argument is that undisputed facts show Mr. Green did not report the comments which he proffers in support of his hostile work environment claim so that there is no evidence the City had actual knowledge of the alleged harassment. None of the City's proposed undisputed facts specifically address the management or supervisory responsibility, or lack thereof, of the individuals whose conduct is in question with respect to Mr. Green's hostile work environment claim. Plaintiff's response brief identifies evidence suggesting that the alleged offenders may have had supervisory authority within the meaning of Title VII. Furthermore, the work titles of Mr. Henderson and Mr. Landers suggest that inference. Construing all inferences in Mr. Green's favor, the court finds and concludes that the City has not carried its burden to show that it is entitled to summary judgment on the ground that Mr. Green never reported any comments to City management.

The City also argues that the comments relied upon by Mr. Green are not so egregious, numerous, and concentrated as to support a race discrimination hostile work environment claim. Along these lines, a large portion of the City's reply brief

is dedicated to urging the court to disregard Mr. Green's new affidavit because it differs from Mr. Green's sworn statements presented at the dispositive motion stage in LittleCharley I. Although there are differences in the way Mr. Green described events in the evidence which was before the court in LittleCharley I and in the evidence which is now before the court, after careful review, the court finds no inconsistencies so blatant as would support a finding that the new affidavit is a sham. The new affidavit is, to say the least, much more detailed than the LittleCharley I affidavit, however, any differences are best left to credibility arguments at trial.

Having determined that Mr. Green's new affidavit should not be disregarded at this stage, the court goes on to consider the sufficiency of that affidavit, along with the other record evidence, to support Mr. Green's hostile work environment race discrimination claim. Unlike Mr. Green's affidavit in LittleCharley I, the new affidavit attributes some of the racially derogatory comments to a particular individual, Mr. Rick Landers. Also, there is testimony from Tammy Mallow which attributes several racially derogatory comments to Mr. Henderson and which suggests a pattern of other racially hostile conduct by Mr. Henderson and others. Although the City argues that Ms. Mallow's deposition testimony should be disregarded for reasons similar to those which caused the court to disregard her affidavit in LittleCharley I,[3] after careful comparison of Ms. Mallow's testimony as it now appears in the record with her affidavit presented in LittleCharley I, the court finds that Ms. Mallow's deposition testimony does not suffer from the same problems as did her earlier affidavit. Accordingly, the court rejects the City's argument that it should disregard Ms. Mallow's deposition testimony for summary judgment purposes.

---

[3] See LittleCharley I Order at doc. no. 106, pp. 6-7 at n.3.

For these and other reasons, the record evidence is more developed in this case at this stage than it was at the same stage in LittleCharley I. The court finds that there is evidence which could support a race discrimination hostile work environment claim and that the City's motion for judgment on that claim should be denied.[4]

This Order next considers the City's arguments that it is entitled to summary judgment on Mr. Green's disparate treatment claims. These claims include Mr. Green's disparate treatment race discrimination claims and his retaliation claims to the extent they are based on disparate treatment (as opposed to Mr. Green's retaliation claim that is based on an alleged hostile work environment, an aspect of Mr. Green's retaliation claim which is addressed separately below). Although the City argues that there is no evidence the City's stated reasons for its handling of Mr. Green's performance pay or deposition pay were merely a pretext for discriminatory treatment or retaliation, construing all disputed evidence and any inferences in Mr. Green's favor, the court finds that there are disputed fact issues regarding disparate treatment and that the City has not shown it is entitled to summary judgment on any of the disparate treatment based claims.

The City also argues that it is entitled to summary judgment on the hostile work environment aspect of Mr. Green's retaliation claim. This aspect of the retaliation claim alleges that the City retaliated against Mr. Green by subjecting him to a hostile work environment based upon Mr. Green's participation in, or support of, protected activity such as that outlined in the pleadings and the evidence. The City describes

---

[4]Plaintiff argues in his reply brief (at pp. 12-16) that facts already ruled insufficient to support a hostile work environment in Messrs LittleCharley and Cheong-Gu's case (LittleCharley I) cannot be used to support Mr. Green's hostile work environment claim in LittleCharley II. There are enough disputed facts and inferences to support Mr. Green's hostile work environment claim even without this contested evidence.

the conduct relied upon by Mr. Green to support this claim at p. 18 of its moving brief. As stated there, the conduct includes "allegations" that there was a threat to run Mr. Green's lawyer out of town; that Mr. Henderson told Mr. Green that Mr. Green was under investigation; that Mr. Henderson accused Mr. Green of falsifying Mr. Green's request for vacation leave for the day Mr. Green was deposed by the City; that Mr. Henderson threatened to subject Mr. Green to a pre-disciplinary hearing and reprimand (although it is undisputed that the hearing was not held, see Mr. Henderson's moving brief, undisputed material fact no. 18); and that Mr. Green was harassed and humiliated by a co-employee on the City radio, after which Mr. Green met with Mr. Henderson about the comments and was told by Mr. Henderson that "people in the department were mad at Mr. Green" for giving deposition testimony in support of Armando Cheong-Gu and because Mr. Green had filed an EEOC charge against the City.

The City does not argue that there are no disputed facts regarding the occurrence of any of this conduct, rather, the City argues that there is no possibility of recovery on the hostile work environment retaliation claim because the offending conduct, if proven, does not establish a sufficiently adverse employment action. Mr. Green's response brief does not take issue with the City's description of the conduct upon which Mr. Green relies. The gist of Mr. Green's entire argument in response to this aspect of the City's summary judgment motion is that, "At the least, the investigation of the Plaintiff and the threat of discipline constitutes a sufficiently adverse action to sustain a retaliation claim." (Response brief, p. 38.) Although the pleadings can be read more broadly to suggest conduct supporting this claim beyond that described by the City at p. 18 of the City's moving brief, Mr. Green has not identified any additional conduct or evidence to support such allegations. It is therefore appropriate to evaluate the sufficiency of this claim based upon the City's

description of Mr. Green's evidence, a description which has now been adopted by the plaintiff.  See Celotex Corp. v. Catreet, 477 U.S. 317, 322 (1986), as quoted in Roberts v. State of Oklahoma, 1997 WL 163524, *3 (10th Cir. 1997) (Roberts unpublished): "To survive summary judgment the nonmoving party cannot rest on its pleadings and must 'make a showing sufficient to establish the existence of an element essential to that party's case.'").

As stated in Hillig v. Rumsfeld, 381 F.3d 1028, 1033 (10th Cir. 2004), a retaliation case cited in Mr. Green's response brief, the longstanding rule in this circuit has been to liberally define the phrase adverse employment action and not limit that term to simply monetary losses in the form of wages or benefits. *Id*. at 1032.  While there need not be economic consequence to meet the requirement that there be some kind of adverse action in a retaliation case, there must be at least some type of act by an employer which does more than de minimis harm when considering the unique factors relevant to the situation at hand. *Id*. 1033.  The employer's conduct must be materially adverse to the employee's job status, although a plaintiff may show materiality other than by showing a tangible employment action. *Id*.  For example, in Hillig, the Tenth Circuit held that very negative references which seriously harmed the plaintiff's ability to obtain employment at the Department of Justice qualified as a sufficiently adverse employment action supporting a Title VII retaliation claim. *Id*. at 1035.

The conduct relied upon by Mr. Green to support an adverse employment action as a result of the City's alleged retaliatory work environment has none of the official and definite characteristics which the negative employment references in Hillig possessed.  The court concludes that the type of conduct in issue here – investigations, threats of discipline, accusations, and radio comments – does not constitute adverse employment action sufficient to support a retaliatory hostile environment claim, even

under the loosest standard suggested by Mr. Green. Accordingly, the City is entitled to summary judgment on this particular aspect of Mr. Green's retaliation claim.

### Mr. Henderson's Motion for Summary Judgment

Mr. Henderson makes a variety of arguments urging summary judgment in his favor on the claims asserted against him.

Mr. Henderson argues that the statements alleged to have been made by him do not rise to the level of actionable racial harassment and thus do not support a hostile work environment claim against him. He argues that there is no evidence of personal involvement by him in any of the conduct which plaintiff proffers to support his hostile work environment claim. In this regard, the court finds that although it is undisputed Mr. Green himself never heard derogatory comments by Mr. Henderson, there is evidence that Mr. Green learned of such comments and there is evidence from Ms. Mallow that she heard Mr. Henderson make such comments repeatedly. Ms. Mallow also testified in her deposition that Mr. Henderson "was real good at making sure there were no witnesses" to his derogatory comments. Mr. Green's affidavit states that after Mr. Henderson became Sewer Line Maintenance Supervisor, the number of racially derogatory comments in the workplace increased to the point that Mr. Green heard such comments two to three times a week. Also, in addition to comments and jokes, there is evidence of other conduct by Mr. Henderson which suggests that Mr. Henderson may have been openly hostile to Mr. Green. With respect to plaintiff's assertions that Mr. Henderson improperly denied Mr. Green performance and deposition pay, Mr. Henderson adopts the City's argument that Mr. Green has no evidence indicating the reasons given for these denials were a pretext for race discrimination or for retaliation, an issue as to which the court has already found disputed facts and inferences.

The court concludes that there are disputed fact issues and inferences which preclude summary judgment in Mr. Henderson's favor.

Conclusion

After careful consideration of the parties' submissions, the record, the pleadings, and the relevant authorities, the court determines that the City is entitled to summary judgment in its favor on Mr. Green's hostile work environment retaliation claim, the claim by which Mr. Green asserts that the City retaliated against him for his participation in and support of protected activity by subjecting him to a hostile work environment. The City's motion for summary judgment is **GRANTED** with respect to Mr. Green's hostile environment retaliation claim.

As to the balance of Mr. Green's claims, the court determines that there are disputed issues of material fact which preclude summary judgment. The court additionally finds that the interests of justice are best served by adjudication of these claims at trial on the basis of a complete evidentiary record. Accordingly, except to the limited extent set out above with respect to Mr. Green's hostile environment retaliation claim, the City's and Mr. Henderson's motions for summary judgment are **DENIED**.

The claims which survive this Order and remain for trial are:

Mr. Green's race discrimination claims against the City, based on allegations of disparate treatment and having been subjected to a hostile work environment due to Mr. Green's race;

Mr. Green's retaliation claims against the City based on allegations of retaliatory disparate treatment against Mr. Green due to his participation in or support of protected activity; and

Mr. Green's race discrimination claims against Mr. Henderson based on allegations of disparate treatment and having been subjected to a hostile work environment due to Mr. Green's race.

Dated this 26th day of August, 2005.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

04-0796p017(pub).wpd